LAWTON v. SOUTH BOUND R. R. CO.

1. SURFACE WATER—WATER COURSES—PRESCRIPTION—PLEADINGS—COMPLAINT.—Allegations that a railroad company closed up by an embankment a ditch which drained plaintiff's lands, without alleging facts going to show that the ditch was a natural water course, or that plaintiff had the right by grant or prescription to so use it, simply alleges damming up surface water, and states no cause of action. Distinction between water course and surface water stated.
2. AMENDMENT OF PLEADINGS—COMPLAINT.—Plaintiff permitted to supply omission apparent on face of complaint by applying to Circuit Court for leave to amend after remittitur sent down.

Before TOWNSEND, J., Hampton, November, 1899. Affirmed.

Action by W. H. Lawton against South Bound Railroad Co. on the following complaint, omitting the formal parts:
"II. That the plaintiff herein, at the times hereinafter mentioned, was and is now a citizen and resident of Hampton County, S. C., and is the owner of a large tract of land situate, lying and being in the said county and State.
"III. That said defendant railroad passes over and

through the plaintiff's said tract of land and near thereto by its roadbed and track.

"IV. That on the 15th day of May, 1897, and on other dates, defendant railroad, by its servants, agents, lessees and employees, caused an embankment to be erected near the thirty-eight mile post on said railroad, in Hampton County, S. C., and a ditch to be filled in, which had been of for a period of thirty or forty years, and by the erection of said embankment and filling in of said ditch, has cut off the natural drainage of a large part of plaintiff's lands, and plaintiff has been actually damaged in the sum of $1,000.

"V. That defendant railroad was told not to place the said embankment so as to obstruct the natural drainage of plaintiff's land, and after embankment was built, under protest of plaintiff, defendant railroad was notified of damage it was doing plaintiff, and refused to remove the same or make a proper opening.

"VI. That before embankment was built and ditch filled in by defendant railroad, plaintiff's lands were good planting lands, and now they are so sobbed with water caused by the obstruction erected by defendant railroad that they are worthless for planting lands, and have been ruined by defendant railroad, causing said land to be worthless."

From order sustaining demurrer, plaintiff appeals on following exceptions:

"I. Because the Circuit Judge erred in deciding that the complaint of plaintiff did not state facts sufficient to constitute a cause of action, and dismissing said complaint; whereas he should have held that the pleadings raised a question of facts to be determined by the jury, as to whether the embankment which had been erected by defendant company was necessary for the protection of defendant's roadbed and right of way.

"II. Because his Honor erred in deciding that the defendant company had the right to close up a ditch which had been in existence thirty or forty years and which drained the

planting lands of plaintiff, without defendant first showing that it was necessary to close up such ditch for the protection of defendant company's roadbed.

"III. Because of error in deciding that defendant company had the right to build an embankment over and across the natural water course which drained plaintiff's lands, and thereby overflow and render plaintiff's lands worthless.

"IV. Because of error in deciding that the ditch which had been in existence for thirty or forty years without interruption used for the purpose of draining plaintiff's land, was not a natural water course or had become so by lapse of time."

*Mr. W. S. Smith,* for appellant, cites: 39 S. C., 472.

*Messrs. C. J. C. Hutson* and *James W. Moore,* contra. The latter cites: 24 Ency., 896; 39 S. C., 475; 54 S. C., 242; 32 S. C., 132.

September 20, 1901. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. Inasmuch as the question presented by this appeal arises under a demurrer to the complaint upon the ground that the facts stated therein are not sufficient to constitute a cause of action, the Reporter will incorporate in his report of the case, a copy of the complaint, omitting the title, the first paragraph and the prayer for relief, which contain nothing material to the question presented. The demurrer was sustained by his Honor, Judge Townsend, in a short order, not assigning any reasons for his conclusion. From the judgment sustaining the demurrer, the plaintiff appeals upon the several grounds set out in the record, which will likewise be incorporated in the report, omitting the formal parts.

Substantially the complaint alleges that the plaintiff is the owner of a large tract of land, situate in the county of Hampton, State of South Carolina, over and through which

the track of the defendant's railroad runs; that, on or about the 15th of May, 1897, the defendant "caused an embankment to be erected near the thirty-eight mile post on said railroad in Hampton County, S. C., and a ditch to be filled in which had been of (here some word or words have been omitted which we cannot undertake to supply by conjecture merely) for a period of thirty or forty years, and by the erection of said embankment and filling in of said ditch has cut off the natural drainage of a large part of plaintiff's lands;" that defendant was notified not to place the said embankment so as to obstruct the natural drainage of plaintiff's lands, and after the embankment was constructed under protest of plaintiff, defendant was notified of the damage it was doing to the plaintiff, and refused to remove the same or to make a proper opening; that before said embankment was thrown up and said ditch was filled in, plaintiff's lands were good planting lands, and now they are so sobbed with water caused by the obstruction aforesaid that they are worthless for planting lands." Before passing upon the specific exceptions upon which this appeal is based, it will be well to lay down certain fundamental and well established principles applicable to cases of this kind.

The obstruction of the flow of surface water and the waters of a *natural water course* are two distinct and very different things, and are attended by entirely different consequences. The former is not actionable, while the latter, if resulting in damage to an adjoining land proprietor, is actionable. In this State, at least, it is well settled that the common law rule prevails, and that surface water is regarded as a common enemy which each landed proprietor may keep off his own premises, even though by so doing he may throw or keep it on his neighbor's premises. *Edwards v. Railroad Company,* 39 S. C., 472, and *Baltzeger v. Railway Company,* 54 S. C., 242, especially the latter, where Mr. Justice Gary goes more fully into the question than was done in the former case. And in this respect a railroad company stands upon the

same footing as an individual landed proprietor. 24 Am. & Eng. Ency. of Law, 950; *Edwards* v. *Railroad Company, supra*. It is material, therefore, to inquire, first, what was the character of the water which the defendant was charged with obstructing; was it surface water or the water of a *natural* water course? To determine this question it is necessary to ascertain the characteristics of these two kinds of waters, and what are the tests by which the one may be dietinguished from the other.

In 24 Ency. of Law, at page 896, it is said: " 'Surface waters' are waters of a casual and vagrant character, which ooze through the soil or diffuse or squander themselves over the surface, following no definite course; They are waters which, though customarily and naturally flowing in a known direction and course, have nevertheless · no banks or channels in the soil, and include waters which are diffused over the surface of the ground, and are derived from rains and melting snows; occasional outbursts of water, which in time of freshet or melting of snows descend · from the mountains and inundate the country, and the moisture of wet, spongy, springy or boggy ground." And on the next page of the same valuable work it is said: "The distinguishing features of surface waters are purely negative, and consist in the absence of the distinguishing features which are common to all water courses. Hence it is that the Courts have not attempted to give any complete and full definition of surface waters. The question that has arisen has usually been whether the water in question was surface water or was a stream or water course. If it has the characteristics of a water course, it is usually treated as such, and is governed by the rules of law applicable to water courses. If the characteristics of a water course are absent, it is usually treated as surface water, and is governed by the rules of law applicable to surface waters. To constitute a water course there must be a stream usually flowing in a particular direction, though it need not flow continually. It may sometimes be dry. It must flow in a definite channel,

having a bed, sides or banks, and it naturally discharges itself into some other stream or body of water. It must be something more than mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes." Again, on the succeeding page, it is said: "It is essential to the existence of a water course that there should be a well defined bed or channel, with banks. If these characteristics are absent, there is no water course, within the legal meaning of the term; hence natural depressions in the land through which surface water from adjoining lands naturally flows are not water courses." These doctrines thus laid down in the text of that standard work are fully supported by the cases cited in notes. Indeed, one of the cases cited, *O'Connor* v. *Fond du Lac &c. Railway Company*, 52 Wis., 52, reported, also, in 38 Am. Rep., 754, is so much like the present case in some of its features as to call for special reference to it. There, as here, the question arose on a demurrer upon the ground that the facts stated in the complaint were not sufficient to constitute a cause of action upon the ground that there was no allegation in the complaint that any stream or water course had been obstructed. On the contrary, the cause of action stated in the complaint, as construed by the Court, was that the defendant had filled up a ditch in constructing its road-bed through which the water falling on the plaintiff's land was accustomed to flow. That case is also pertinent to another aspect of this case, which, though not presented in any of the exceptions, may have been contemplated by the allegation in the fifth paragraph of the complaint, that the defendant had refused to "make a proper opening" in the embankment for the purpose of allowing the water to pass through or under it. But that case, and especially the authorities therein cited, show that if the water obstructed was surface water, then the defendant was under no obligation to do so, and hence its refusal to do what was not required by law would not constitute any cause of action.

We next propose to examine the allegations made in the

complaint in the light of the foregoing principles of law. It is quite apparent that neither the terms "surface water" nor "natural water courses" are used in the complaint, but that alone would not be conclusive if there are facts alleged which would show that a natural water course was obstructed. For if there are no such facts alleged, then, under the authorities above quoted, the water which was obstructed must be treated as surface water. There is no allegation that there was "a stream usually flowing in a particular direction," nor is there any allegation that the water obstructed flowed "in a definite channel, having a bed, sides or bank," nor is there any allegation that there was "any well defined bed or channel with banks," through which the water obstructed was accustomed to flow; and this, as said, "is essential to the existence of a water course." Indeed, there is not a single fact alleged from which an inference could be reasonably drawn that the water in question was the water of a natural water course. On the contrary, the irresistible inference from the facts stated in the complaint is that the water obstructed was nothing but surface water, which was drained from plaintiff's land by the ditch, a mere *artificial* channel. No lapse of time could invest such a channel with the characteristics of a *natural* water course. Looking at the complaint alone, it would seem that the *gravamen* of the plaintiff's claim is the filling up of the ditch referred to in the fourth paragraph of the complaint. If so, there is no allegation that the ditch or any part thereof was on the plaintiff's land, nor is there any allegation that the plaintiff had either by grant or prescription acquired the right to use such ditch as a means of draining his lands; and, therefore, the filling up the ditch would not afford him any cause of action.

It only remains to consider the specific exceptions taken in support of this appeal. The first and second exceptions, raising practically the same point, may be considered together. That point was no doubt based upon what was said in the case of *Edwards* v. *Railroad Company, supra;*

but in the light of the comments made upon that case in the subsequent case of *Batzeger* v. *Railway Company, supra,* it is manifest that those exceptions cannot be sustained.

The third exception is based upon an assumption which was wholly unwarranted by anything that appears in the record before us; for there is nothing whatever to show that the Circuit Judge held that the defendant "had the right to build an embankment" over and across the natural water course which drained plaintiff's land, and thereby overflow and render plaintiff's land worthless.

The fourth and last exception cannot be sustained, for there is no allegation of any fact tending to show that the plaintiff had acquired either by grant or prescription the right to use the ditch as a means of draining his lands; for there is no allegation of any *adverse* use made either by plaintiff or any one else of the said ditch for that purpose, and certainly a ditch—a purely *artificial* channel—cannot with any propriety be regarded as a *natural* water course.

We do not think, therefore, that there was any error in sustaining the demurrer. But this Court is always reluctant to dismiss a complaint for the want of allegations necessary to show that plaintiff has a cause of action, especially where, as in this case, there is a manifest omission in the complaint. For while it is true that cases must be decided upon the facts as they appear in the record; and if there is any omission, inadvertent or otherwise, in such record, it is incumbent upon the appellant to supply the same before the case is submitted for a hearing, yet recognizing the fact that every person, even the most careful, is liable to make mistakes or omissions, we are disposed to allow the appellant the opportunity, if he can, to repair such faults. To this end we will allow the appellant an opportunity to apply to the Circuit Court for leave to amend his complaint, if he shall be so advised.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed, with leave, however, to the plaintiff to apply to that Court for permission to amend his com-

plaint, provided that such application be made as soon as practicable after the *remittitur* is filed in that Court.

MR. JUSTICE POPE.  I prefer to concur in the result.  I am not satisfied that a water course is correctly defined.

MR. JUSTICE GARY *concurs in the result.*